|2KUHN, Judge.
Defendant, James Conrad Lavigne, was charged by grand jury indictment with first degree murder, a violation of La. R.S. 14:30. The indictment was subsequently amended to second degree murder, a violation of La. R.S. 14:30.1. Defendant pled not guilty to the amended indictment and, after a trial by jury, was convicted as charged. Thereafter, defendant filed a motion in arrest of judgment, a motion for new trial, and a motion for post-verdict judgment of acquittal, all of which were denied by the trial court. The trial court then sentenced defendant to a term of life in prison at hard labor, without benefit of parole, probation, or suspension of sentence. In addition, the trial court ordered that defendant be given credit for time *906 served. Defendant has filed this appeal and has assigned four errors as follows:
1. The trial court erred when it overruled defendant’s objection to the state’s improper references during voir dire.
2. The trial court erred when it would not allow the defendant access to a transcript of a statement for use during cross-examination.
3. The trial court erred when it allowed the state to reopen its case in chief after resting.
4. The evidence is insufficient to support the conviction.
Defendant expressly abandoned assignments of error numbers 1-3.
FACTS
Defendant testified at trial that, on the night of September 14, 1992, Dale Craig, Zebbie Berthelot, and Roy Maurer were at defendant’s apartment. Craig stated that he needed a ride to pick up his girlfriend. Because they were unable to find a ride Craig decided he wanted to steal a car, and he asked defendant, Berthelot, and Maurer to accompany him.
According to defendant’s testimony the four of them left the apartment and looked for cars that were unlocked. They later returned to defendant’s apartment and ate. Craig continued to express his desire to get a car because he had to go and pick up his | ggirlfriend. Berthelot left the apartment to get a “dent puller,” which he thought he could use to pull the ignition out of a car.
Defendant, Craig, Berthelot and Maurer left defendant’s apartment, and walked towards the Kirby Smith dormitory parking lot on the LSU campus. Craig and Maurer led the group while defendant, Berthelot and a girl followed. As defendant was lighting a cigarette, he “looked up in time to see [Craig] jump in this guy’s face, and ... he was coming out of his car.” During this time, defendant recalled that he had been standing off to the right side of the truck, about fifteen feet behind it. Craig forced the victim into the wheel-well in the back of the truck and started screaming at Maurer to get into the truck and find the keys. Maurer “got in the truck and, uh, he started looking for the keys and [Craig] was steady screaming and hitting [the victim] on the top of the head with the gun and screaming at [Berthe-lot] and I to get in the truck, get in the truck.”
Defendant and Berthelot got into the truck. The four men drove around, stopping for gas, while the victim was moved to the back seat of the vehicle. As they drove down Government Street in the direction of Highland Road, Craig said they needed “somewhere” to drop off the victim. Berthelot suggested Independence Park, but Craig said that location was too close to the library, and the victim would be able to get to a telephone. Defendant suggested they try Burbank Drive because “it’s a long, dark road ... and he’ll have a long walk before he can get to a phone.... ” They drove to Burbank Drive, and eventually turned onto an extension of Kenilworth Parkway. Once on Kenilworth Parkway, they pulled off the road into a construction site and began exiting the vehicle.
So I climbed out and I stepped back to give [Craig] room to get out, and he had [the victim] by, uh, [the victim’s] left arm and had the gun on [the victim] the whole time, uh, had it (sic) by the shoulder or his head.... And he turned to [Berthelot] and ... he said, [Berthelot], give [defendant] your gun. So [Berthelot] pulled out his gun and he handed it to me and I grabbed it by the barrel. And [Craig] said you’re going to take this gun and we’re going to walk down here and you’re going to pop.... this kid on the back of the head and he’s going to take a little nap and he’s going to find a phone and everything is going to be okay. So, uh, we started walking away from the truck and I guess we got about, uh, about seventy or eighty feet along and, uh, [Craig] started looking at me, uh, cutting his eyes at me and | ¿jerking at me like, come on, man, come on. And I took that as a sign that I should hit him. So I pulled back and I hit [the victim] across the back of the head.
[[Image here]]
Uh, he fell and, uh, he rolled part way over and I turned and started to walk back *907 to the truck and I took about three steps and that’s when the shooting started.
Thereafter, they drove to either Denham Springs or Walker in order to pick up Craig’s girlfriend; however, she was not there because she had already found a ride. Defendant wanted to go back to his apartment, but Craig wanted him to “hang out.” Craig was planning to marry his girlfriend and needed defendant to be their witness. Apparently, defendant, Craig, Craig’s girlfriend, and Maurer spent the remainder of the night at Craig’s house. Defendant and Maurer “stayed up all night,” and at some point during the night, Craig told his girlfriend about the murder.
The next morning, after hearing news reports of the crime, Craig’s mother began to question the four men about the truck they had brought home and their involvement in the crime. The truck was then taken by Craig and Maurer to another location and burned. Defendant and Craig’s mother followed in another vehicle. Later that day defendant was arrested by the sheriffs department.
The victim’s body, which had been recovered earlier that same day, evidenced three gunshots to the head.
ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends the evidence was insufficient to support a conviction of second degree murder. Specifically, he urges the most he had was an intent to commit theft; thus, no rational trier of fact could have found, beyond a reasonable doubt, that he had the specific intent to kill or that he had the intent to commit any of the enumerated felonies of La. R.S. 14:30.1.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the Iscrime beyond a reasonable doubt. See La. Code Crim. P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
La. R.S. 14:30.1, which defines second degree murder, provides, in part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
According to defendant’s own testimony, he joined Craig, Berthelot and Maurer in looking for a vehicle to steal. He was present from the time Craig pulled a weapon, and took the victim and his vehicle from the Kirby Smith parking lot. Defendant was in the stolen vehicle as they drove around town with the victim laying unconscious in the back seat. It was defendant who suggested a location at which the victim could be left. Once there defendant, who like Craig was armed, walked the victim some distance from the vehicle. Defendant struck the victim on the back of the head with his weapon, and then Craig fired several shots from his weapon into the victim’s head.
We have carefully reviewed the record and find the evidence supports the jury’s determination. The evidence, viewed in the light most favorable to the prosecution, establishes that defendant was a principal to the crime of armed robbery, during which the victim was killed. Thus, the evidence was legally sufficient for the jury to conclude the |6state proved beyond a reasonable doubt that defendant, as a principal, was guilty of the *908 crime of second degree murder committed during the perpetration of an armed robbery.
PATENT ERROR
We note the trial court did not wait the required twenty-four hours after denial of defendant’s post-trial motions before imposing sentence, nor did defendant waive that waiting period. See La.Code Crim. P. art. 873. Because defendant does not argue or in any way show that he was actually prejudiced by the trial court’s failure to observe the waiting period (See La.Code Crim. P. art. 921), and because he does not challenge his sentence on appeal, we find this error to be harmless. See State v. Augustine, 555 So.2d 1331, 1334 (La.1990); State v. Claxton, 603 So.2d 247, 250 (La.App. 1st Cir.1992).
CONCLUSION
For the reasons herein expressed, we affirm defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.